# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Hofer,                          :
        Petitioner          :
                            :
        v.                  : No. 73 C.D. 2014
                            :
Workers' Compensation Appeal            :
Board (Patton Beverage, Inc./Amguard    :
Insurance Company),                     :
        Respondents         :

Michael Hofer,                          :
        Petitioner          :
                            :
        v.                  : No. 74 C.D. 2014
                            : Submitted: July 11, 2014
Workers' Compensation Appeal Board      :
(Patton Beverage, Inc./Norguard         :
Insurance Company),                     :
        Respondents         :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI       FILED: July 31, 2014

        Michael Hofer (Claimant) petitions for review of two orders of the Workers' Compensation Appeal Board (Board) affirming the decisions of a Workers' Compensation Judge (WCJ) which denied Claimant's Petitions to Modify Compensation Benefits (modification petitions) and Petitions to Reinstate

Compensation Benefits (reinstatement petitions).[1] For the reasons that follow, we affirm.

On December 9, 1997, Claimant sustained an injury to his left knee during the course and scope of his employment with Patton Beverage, Inc. (Employer). Employer subsequently issued a Notice of Compensation Payable (NCP) recognizing the injury as inflammation of the left knee. On April 9, 2001, Claimant sustained an injury to his right knee during the course and scope of his employment, and Employer issued another NCP recognizing the injury as a right knee meniscus tear. Claimant's benefits were ultimately suspended due to his return to work at earnings equal to or greater than his pre-injury earnings.[2]

In 2009, Claimant filed modification and reinstatement petitions alleging that he was unable to work as of August 1, 2005, due to his work-related

---

[1] The Board issued an identical opinion and order as to both appeals. By order dated March 25, 2014, this Court consolidated Claimant's petitions for review of those orders.

[2] Claimant's benefits were initially suspended on July 31, 2001. Claimant filed a reinstatement petition in May 2003, alleging that his right knee injury worsened, and Employer filed a Petition to Terminate Compensation Benefits (termination petition) in December 2003, alleging that Claimant had fully recovered from his right knee injury as of December 1, 2003. A WCJ granted Claimant's reinstatement petition, reinstating benefits from May 28, 2003, through November 2, 2003, and suspending benefits effective November 3, 2003, and dismissed Employer's termination petition. Employer filed another termination petition in 2005, alleging that Claimant had fully recovered from his left knee injury as of February 4, 2005, which the WCJ dismissed. In that decision, the WCJ characterized Claimant's left knee injury as degenerative arthritis.

2

knee injuries.[3]   Before the WCJ, Claimant testified that he quit working for Employer in July 2005 in order to receive social security disability benefits.  He acknowledged that a position remained available to him if he wanted to continue working for Employer at that time.  Claimant stated that he has not worked in any capacity or looked for work since July 2005, explaining that he does not feel capable of returning to work due to his knee pain.  Claimant testified that he considers himself to be retired, but he would consider returning to work if a position that allowed him to primarily remain seated became available and "if it sounds like the best idea to me."  (April 13, 2010 Hearing Transcript at 20).  He further explained that he continues to take prescription pain medication for his left knee, and that he had treated with two doctors at Blair Orthopedics, but had not seen either doctor since July 2005.

Claimant also presented the deposition testimony of Vincent Morgan, M.D. (Dr. Morgan), who is board certified in physical medicine and rehabilitation and examined Claimant on October 26, 2010.  Dr. Morgan diagnosed Claimant with chronic left knee pain with a history of an open meniscectomy and subsequent development of progressive degenerative arthritis with a high tibial osteotomy in 2000, and chronic right knee pain with a history of a large meniscus tear and subsequent medial meniscectomy in 2001, followed by a unicondylar arthroplasty of the right knee in 2003.  Based on his examination, Dr. Morgan opined that Claimant would not be physically capable of performing the type of work he

---

[3] Claimant also filed two Petitions for Review of Medical Treatment and/or Billing (review petitions), which the WCJ granted.  However, the review petitions are not at issue in this appeal.

3

previously performed for Employer because the nature of the work was heavy at times and would require Claimant to carry objects for significant distances. He further opined that Claimant will require a left knee replacement within the next five years and ultimately will require a right knee replacement as well.

Employer presented the deposition testimony of Thomas Muzzonigro, M.D. (Dr. Muzzonigro), a board certified orthopedic surgeon who examined Claimant on January 5, 2011. Dr. Muzzonigro testified that at the time of his examination, Claimant stated that he had intermittent knee pain which became worse with various stressors, such as walking up or down stairs or squatting. However, he testified that Claimant could still perform his daily activities with mild limitations. Dr. Muzzonigro explained that Claimant was not actively treating for either knee at the time of the examination except for taking Celebrex intermittently. Based on the physical examination and his review of Claimant's medical records, Dr. Muzzonigro ultimately opined that Claimant could still perform the work activities he had been doing at the time he quit working in July 2005.

The WCJ found that Claimant's loss of earnings as of August 1, 2005, was not related to his work injuries. In so finding, the WCJ noted:

> Claimant continued working his pre-injury job for two years before stopping in 2005. During this time, Claimant had little treatment for his knees. While Claimant suggested that he stopped working because … he could no longer do the job, his testimony in this regard was less than clear. Specifically, Claimant said that the true reason that he left work was to go on disability, presumably Social Security disability. Claimant offered

4

no medical evidence specifically establishing that his knee injuries were the reason for his disability, or that he treated for his knees when he stopped working. In fact, Claimant had not treated for his knee problems for years, and there was no evidence that his knees were giving Claimant more problems when he stopped working. … Finally, if Claimant's knees were truly the motivating factor in his discontinuance of work, it would be reasonable to expect that he would not have waited four years to raise it as an issue…

(WCJ's June 23, 2011 Decision at 5).

The WCJ found Dr. Morgan's testimony to be credible, but only to the extent that it addressed the condition of Claimant's knees at the time of his October 26, 2010 examination. Because Dr. Morgan did not examine Claimant prior to that date and because "Claimant's treatment for his knees between 2003 and 2010 was sporadic at best," the WCJ rejected Dr. Morgan's testimony to the extent that he offered any opinions of Claimant's knee conditions prior to his examination. (*Id.* at 4). The WCJ rejected Dr. Muzzonigro's testimony that Claimant could return to his pre-injury position as of January 5, 2011, noting that this opinion was inconsistent with the testimony that Claimant's work was heavy at times and with Claimant's well-documented advanced knee arthritis. The WCJ concluded that Claimant's injuries had worsened to the point that he could not perform his pre-injury job as of October 26, 2010, but that Claimant was not entitled to a reinstatement of benefits because he voluntarily retired from the workforce as of that date. Accordingly, the WCJ denied Claimant's modification and reinstatement petitions. Claimant then appealed to the Board, which affirmed, noting that the testimony supported the WCJ's finding that Claimant voluntarily retired and was

not forced to leave the workforce due to his work injuries. This appeal followed,[4] in which Claimant argues that the WCJ's finding that he voluntarily retired was not based on substantial evidence.

Pursuant to Section 413(a) of the Workers' Compensation Act (Act),[5] a WCJ may reinstate a claimant's workers' compensation benefits upon proof that the claimant's disability has increased or recurred. *Namani*, 32 A.3d at 854. "A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010). Once the claimant meets this burden, the burden then shifts to the party opposing the reinstatement petition to show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. *Id.*

Where an employer challenges the entitlement to compensation on grounds that a claimant has retired, the employer has the burden of proving by the totality of the circumstances that the claimant has voluntarily left the workforce. *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 67 A.3d

---

[4] Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 854 n.2 (Pa. Cmwlth. 2011).

[5] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §772.

6

1194 (Pa. Cmwlth. 2013). "[T]he employer may do so by objective facts, including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment." *Id*. at 1210. "Only after the employer has carried its burden of showing that the claimant has retired does the burden shift to the claimant to rebut the presumption that he has voluntarily withdrawn from the workforce." *Day v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 6 A.3d 633, 641 (Pa. Cmwlth. 2010). "[A] claimant may satisfy this burden either by showing that he is still looking for work or has been forced to withdraw from the entire workforce by his work-related disability." *Id*.

Here, the WCJ's findings that Claimant's loss of earnings as of August 1, 2005, was not related to his work injuries and that Claimant voluntarily retired are supported by substantial evidence. As discussed above, Claimant offered only equivocal testimony and no medical evidence, establishing that his work-related knee injuries were the reason he left his position with Employer. As the WCJ recognized, the fact that Claimant worked for two years in his pre-injury position before quitting, received sporadic treatment for his knee injuries since his return to work, and waited four years before raising the issue belies his contention that he was forced into retirement due to those injuries. Moreover, Claimant testified that he had not looked for any work at all since leaving his position in July 2005, and that he considered himself to be retired. The totality of the circumstances here supports the conclusion that Claimant was not forced to leave

7

his position due to his work injuries and, thus, is not entitled to a reinstatement of benefits.[6]

Accordingly, the orders of the Board are affirmed.

_____
DAN PELLEGRINI, President Judge

---

[6] Claimant testified that he was receiving social security disability benefits, which would seem to suggest that he was unable to perform any job and, thus, did not voluntarily withdraw from the workforce. As we explained recently in *Keene v. Workers' Compensation Appeal Board (Ogden Corporation)*, ___ A.3d ___ (Pa. Cmwlth., No. 1421 C.D. 2010, filed June 4, 2014):

> Disability is defined to include those who are unable "to engage in any substantial gainful activity" because of a medically determinable impairment which lasts for twelve months and is so severe that the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). Thus, the receipt of social security disability benefits is actually not evidence that a person voluntarily withdrew from the workforce, but, rather, is evidence that the person's impairment took that person out of the labor market.

*Id.*, slip op. at n. 4. However, Claimant never testified that he was receiving social security disability benefits as a result of his work-related injuries, and, as noted above, the WCJ specifically found that Claimant failed to prove his knee injuries were the reason for his disability. In any event, Claimant failed to raise this argument on appeal.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Hofer,                                          :
                              Petitioner                :
                                                        :
          v.                                            : No. 73 C.D. 2014
                                                        :
Workers' Compensation Appeal                            :
Board (Patton Beverage, Inc./Amguard                    :
Insurance Company),                                     :
                              Respondents               :

Michael Hofer,                                          :
                              Petitioner                :
                                                        :
          v.                                            : No. 74 C.D. 2014
                                                        :
Workers' Compensation Appeal Board                      :
(Patton Beverage, Inc./Norguard                         :
Insurance Company),                                     :
                              Respondents               :


**O R D E R**


AND NOW, this 31<u>st</u> day of <u>July</u>, 2014, the orders of the Workers' Compensation Appeal Board, dated December 17, 2013, at Nos. A11-1143 and A11-1144, are affirmed.


_____
DAN PELLEGRINI, President Judge